### BARBER v. BARBER. (No. 9323.)

(Court of Civil Appeals of Texas. Ft. Worth. May 8, 1920. Rehearing Denied June 12, 1920.)

1. **Husband and wife** ⟜257 — **Revenue from wife's land occupied by husband and wife, community funds.**

Rents and revenues derived from wife's land occupied by husband and wife constitute community funds.

2. **Husband and wife** ⟜258—**Husband entitled to one-half improvements on wife's land, paid for out of community funds.**

Where improvements placed on wife's land occupied by husband and wife were paid for out of community funds, husband was entitled to a one-half interest therein.

3. **Homestead** ⟜97—**Husband not entitled to lien on wife's homestead for improvements out of community funds.**

Where improvements on wife's land had been paid for out of community funds, the husband, though entitled in wife's divorce action to personal judgment for one-half of the value of such improvements, was not entitled to lien on the land to secure the payment of such judgment, where the land was wife's homestead, in view of constitutional provisions protecting the homestead from forced sale for the payment of debts.

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Action by Mrs. Lizzie Barber against W. W. Barber, in which defendant brought a cross-action. Judgment for plaintiff, and for defendant on his cross-action, and from the latter judgment plaintiff appeals. Affirmed as reformed.

R. E. Carswell and Patterson & Lobdell, all of Decatur, for appellant.

McMurray & Gettys, of Decatur, for appellee.

DUNKLIN, J. Mrs. Lizzie Barber sued W. W. Barber, her husband, for a divorce and for a division of property. Upon trial of the case without a jury, she was granted a divorce as prayed for, and was also awarded title to a farm consisting of 200 acres of land, which the court found to be her separate property and the homestead of herself and her unmarried daughter. But the court further awarded the defendant a personal judgment against the plaintiff for the sum of $1,900 as the defendant's half of the community funds which had been used for improvements upon the farm, and to secure payment of the same an equitable lien upon the farm was decreed. No complaint has been made by either party of the decree of divorce, but the plaintiff has prosecuted this appeal from the judgment of the court in favor of the defendant upon his cross-action.

The following facts were found by the trial judge, and the correctness of the same has not been challenged:

At the time plaintiff married the defendant she owned a tract of land consisting of 100 acres, and which therefore was her separate property. That tract is designated in the findings as tract No. 1.

[1] After the marriage, tract No. 1 was sold for the sum of $1,600 and another tract of 215 acres was purchased, which is designated as tract No. 2. The consideration for that purchase was $1,600 cash, which was paid with the proceeds of the sale of tract No. 1, and the assumption of an incumbrance on tract No. 2 of $1,400. The deed to tract No. 2 was made to the plaintiff, but contained no recitals to the effect that it was for her own separate use and benefit. After the purchase of tract No. 2, plaintiff and defendant moved upon it and made it their home, and while living upon it they constructed permanent and valuable improvements thereon, which cost $1,100, and which enhanced the value of the land in that sum. The funds so invested for improvements consisted of rents and revenues derived from the land, which therefore constituted community funds.

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

BARBER v. BARBER

Several years after the purchase of tract No. 2 the same was conveyed to the Bridgeport Coal Company in exchange for a tract of 200 acres of land, designated as tract No. 3, and being the property in controversy. As a consideration for that exchange, the Bridgeport Coal. Company paid the sum of $2,000 in cash, and assumed the payment of the $1,400 incumbrance then outstanding against tract No. 2. The deed from the Bridgeport Coal Company to the tract of land in controversy was to the plaintiff, Lizzie Barber, and recited that the consideration therefor was paid out of her separate estate, and that the conveyance was to her "for her sole and separate use and estate."

Soon after the purchase of the land in controversy, plaintiff and defendant moved upon it, and made it their home, and for several years thereafter and up to the date of their separation they occupied and used the same as their homestead, and while so occupying it they made valuable and permanent improvements thereon at a cost of $3,400, which enhanced the value of the land to that extent. The $2,000 which had been received from the Bridgeport Coal Company in the exchange of tracts Nos. 2 and 3 was used in paying for those improvements, and $700 additional was paid out of the community funds belonging to plaintiff and defendant. The balance of the cost of said improvements, to wit, $750 has not been paid, but has been secured by a statutory materialman's lien, which was fixed upon the land for some of the improvements so made thereon and mentioned above. The property in controversy, with the improvements thereon, is now worth "from $12,000 to $15,000."

After plaintiff and defendant separated, the defendant abandoned the property as his home, but the plaintiff, with her unmarried daughter, by a former marriage, continued to occupy and claim the property as her homestead, and is still continuing to do so.

[2] The community estate of plaintiff and defendant was interested in the improvements placed upon the property in controversy to the extent that the same were paid for out of the community funds, and the defendant is entitled to one-half of the same, and the same can be said of the improvements placed on tract No. 2. Maddox v. Summerlin, 92 Tex. 483, 49 S. W. 1033, 50 S. W. 567.

As shown above, the defendant's half of the improvements placed on tract No. 2 was $550. That interest was represented and included in the $2,000 received in exchange of tracts Nos. 2 and 3, and afterwards used in paying for improvements on tract No. 3. The defendant's half of the $700 additional paid out of the community funds for improvements on tract No. 3 was $350. Hence $550, plus the $350, aggregating $900, represented the total amount expended for improvements on the property in controversy out of defendant's half of the community funds. And he is entitled to compensation therefor, but he is not entitled to any compensation for any part of the $750 which is still owing for the improvements and to secure which a lien has been fixed upon the property, since he has paid no part of the same up to the present time.

[3] But we are of the opinion that while the defendant is entitled to a personal judgment against plaintiff for the said sum of $900 on account of said improvements, no lien can be fixed upon the land in controversy to secure the same. Maddox v. Summerlin, 92 Tex. 483, 49 S. W. 1033, 50 S. W. 567; Inge v. Cain, 65 Tex. 75; Moore v. Chamberlain (Sup.) 195 S. W. 1135; Kearby v. Cox (Com. App.) 211 S. W. 932. All the decisions so cited give full force and effect to the constitutional provision protecting the homestead from forced sale for the payment of all debts with certain exceptions, and providing that "no mortgage, trust deed or other lien on the homestead shall ever be valid." With certain exceptions they further hold that any such attempted lien is absolutely void. If the plaintiff and defendant had by agreement attempted to create a lien upon the homestead in favor of the defendant for the defendant's half of the community funds used for improvements, it is clear that under those decisions and the Constitution, such attempted lien would have been void, and we are unable to perceive how a court of equity could fix a lien upon the homestead in favor of the defendant, and thus violate the plain provision of the Constitution. The defendant has cited Bond v. Hill, 37 Tex. 626; Clift v. Clift, 72 Tex. 149, 10 S. W. 338; Rice v. Rice, 21 Tex. 58; Cameron v. Fay, 55 Tex. 61; Welder v. Lambert, 91 Tex. 510, 44 S. W. 281, and other decisions to sustain the action of the trial court in fixing a lien upon the plaintiff's homestead for the defendant's half of the community funds used in improving it, but none of those decisions are directly in point. In Welder v. Lambert, it was held under the Spanish law that when improvements paid for out of community funds are placed upon the land which is the separate property of one of the consorts, the amount so expended for the improvements could be made a charge upon the property in favor of the community estate, but none of the decisions hold directly that the same can be done under the present Constitution of this state, although practically all of them hold that in the adjustment of equities between the husband and wife after dissolution of the marriage the one owning the title to the property should compensate the other for his or her half of the community funds so invested. In Inge v. Cain, supra, the history of the homestead exemption under our several Constitutions is recited, and it is noted that under Constitutions adopted prior to 1876 an attempted lien upon a homestead was not absolutely void, but voidable only, and

might be enforced after the homestead was abandoned, but that by the Constitution of 1876 it was provided that all liens, with certain exceptions, attempted to be placed upon a homestead, would be absolutely void. That difference in those constitutional provisions may shed some light upon some expressions used in the early decisions relating to controversies arising before the adoption of the Constitution of 1876.

Accordingly, we are of the opinion that the judgment of the trial court should be so reformed as to give the defendant a personal judgment against the plaintiff for the sum of $900, with interest thereon at the rate of 6 per cent. per annum from the date of said judgment, and that the title to the property in controversy be vested in the plaintiff free of any lien or charge thereon claimed by the defendant for any sum so expended for improvements, but without prejudice to any right of the defendant hereafter to claim such a lien by right of subrogation in the event he is compelled hereafter to pay any part of the $750 to secure which a statutory mechanic's lien has been fixed, as above noted, and with the further decree that as between plaintiff and defendant said incumbrance is fixed as the debt of the plaintiff only, and not as a debt owing in whole or in part by the defendant.

As so reformed, the judgment in the respect noted will be affirmed, but the decree of divorce, of which no complaint is made, is left undisturbed.