INSURANCE COMPANY OF NORTH AMERICA, Appellant,

v.

Mrs. Jack E. BARKER, Appellee.

No. 17159.

Court of Civil Appeals of Texas, Fort Worth.

Dec. 18, 1970.

Rehearing Denied Jan. 22, 1971.

Akin, Vial, Hamilton, Koch & Tubb, and Charles J. McGuire, Dallas, for appellant.

Davis, Callaway & Marshall, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

Mrs. Jack E. Barker, intervenor in a garnishment before judgment proceeding, sought to have it declared that the deposit in her name in the garnishee bank was her sole and separate property. Suit to which the garnishment was ancillary was one against her husband for debt, filed by the Insurance Company of North America.

Mrs. Barker moved for summary judgment freeing her deposit, with her motion supported by affidavits of her father-in-law and husband as well as her own. The proof supplied thereby was to the effect that the original amount deposited, when the account was opened in the garnishee bank, constituted funds of the father-in-law (delivered in the form of a check made payable to the husband and by him endorsed over to Mrs. Barker) either given to her or given to the husband in trust to be delivered to her so that she would be able to support her family during the period involuntary bankruptcy proceedings were pending against her husband.

The Insurance Company of North America filed its own motion for summary judgment. A judgment was rendered which granted Mrs. Barker a summary judgment and denied the plea of the insurance company. From this judgment the Insurance Company of North America appealed.

Reversed; remanded for trial.

■ We are of the opinion that the credibility of the testimony of Mrs. Barker and her husband and father-in-law were all cast in issue in the case and for that reason could have done no more than raise an issue of fact upon Mrs. Barker's theory. See McDonald, Texas Civil Practice, Sec.

17.26.5, "Summary Judgment——(IV) Determination of Motion on Matters Outside Pleadings", where it is stated: "Where a motion finds support only in the affidavits of interested parties or witnesses (and expecially where such affidavits deal with facts peculiarly within the affiants' knowledge), the credibility of such affiants normally will be for the jury." See also McDonald, Texas Civil Practice, Ch. XI, "Jury Trial: General", Sec. 11.28, "Motion for Instructed Verdict.—D. Situation in Which Verdict Directed", and in particular cases annotated under Note 36 (on p. 1040 of original Vol. 3), stemming from the original authority of Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904 (1942).

■ Based upon the foregoing our judgment is necessarily one which denies Mrs. Barker's right to summary judgment and reverses that of the trial court granting such. We proceed to a consideration of the asserted right to the summary judgment by the Insurance Company of North America.

Texas Constitution, Vernon's Ann.St., Art. 16, Sec. 15, "*Separate and community property of husband and wife*", reads, in part: "All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of the wife; * * *."

To be noted is the fact that the jurisdiction attached relative to pertinent matters in the trial court before January 1, 1970, effective date of the Texas Family Code, and the statutes theretofore in effect are those to which reference should be made.

Vernon's Ann.Tex.Civ.St. Art. 4613, provided in part, as follows: "All property owned or claimed by either spouse before marriage and that acquired during marriage by gift, devise or descent and the increase of property thus acquired is a spouse's separate property. * * * The

separate property of a spouse is not subject to liabilities of the other spouse unless both spouses are liable by other rules of law. All property acquired by either spouse during marriage, other than separate property, is community property."

V.A.T.S., Art. 4619, provided that: "All property possessed by either spouse during or on dissolution of marriage is presumed to be community property."

V.A.T.S., Art. 3996, provides: "Every gift, conveyance, assignment, or transfer of, or charge upon, any estate real or personal, * * * with intent to delay, hinder or defraud creditors, * * * of or from what they are, or may be, lawfully entitled to, shall, as to such creditors, * * * be void."

V.A.T.S., Art. 3997, provides: "Every gift, conveyance, assignment, transfer or charge made by a debtor, which is not upon consideration deemed valuable in law, shall be void as to prior creditors, unless it appears that such debtor was then possessed of property within this State subject to execution sufficient to pay his existing debts; * * *."

Under V.A.T.S., Art. 3997, it has been held that where fraud is established or is to be presumed, *prima facie,* the burden of proof is upon him who asserts that a gift, conveyance, assignment, transfer or charge made was supported by consideration or that at the time thereof he was possessed of property within the state subject to execution sufficient to pay his existing debts. Evans v. First Nat. Bank of Mt. Vernon, 65 S.W.2d 366, 368 (Texarkana Civ.App., 1933, writ dism.). See other cases annotated in 18A Texas Digest, "Fraudulent Conveyances", ☞277, "Consideration".

With the foregoing as a premise the Insurance Company of North America has constructed a persuasive argument based upon the holdings and language to be found in Gleich v. Bongio, 128 Tex. 606, 99 S.W.2d 881 (1937); Beeler v. Beeler, 363 S.W.2d 305 (Beaumont Civ.App., 1962,

writ dism.); and Solether v. Trinity Fire Ins. Co., 124 Tex. 363, 78 S.W.2d 180 (1935). The insurance company contends that the affidavits intended to support the motion of Mrs. Barker established that the "loan" of the money in question (disregarding the form used, a check made payable to the husband and endorsed by him over to the wife) from the father-in-law to her husband (who in turn attempted to make a "gift" thereof to the wife as her separate property) was made upon what would necessarily be the "credit" of both Mrs. Barker and her husband because there was an absence of any agreement by the father-in-law that he would "look only" to Mrs. Barker for its repayment. The insurance company's contention is that the funds deposited into Mrs. Barker's account in the garnishee bank were community funds of Mrs. Barker and her husband under applicable laws of the State of Texas.

Necessarily the insurance company asserts that there was a "two-step" situation; funds constituting a loan transferred from the father-in-law to the husband as the first step and the subsequent transfer thereof as a purported gift from the husband to Mrs. Barker as the second. In other words the insurance company believes that there were two separate transactions, though the consideration for the first of them was the husband's promise of the subsequent delivery to Mrs. Barker. But in our opinion that is only one of two (or more) conclusions possible to be drawn upon a trial before a jury.

It might be reasonable to treat such as a single transaction, though the evidence should be more fully developed. In view of the fact that the transaction was handled by use of a check which required the endorsement of the husband a proper factual conclusion might be that the father-in-law made delivery of the same in trust for Mrs. Barker to the husband as trustee. For example, if that was intended by him the father-in-law would have been at liberty to stop payment on the check had it not been evidenced by the check at time of its

presentment to his bank that the anticipated action had taken place, i. e., the delivery to Mrs. Barker and deposit of the check in her own bank account.

It was indicated in the affidavits that Mrs. Barker had herself agreed to bear the burden of a trust in that she was to use the money for the support of her family while the bankruptcy proceedings pended against her husband, failing which the father-in-law might have been entitled to a remedy against her and to the fund, or what might remain of it, in the depository in question.

The fact that the husband agreed to be obligated upon the transaction and to repay the father-in-law would not necessarily, as a matter of law, operate to make of the funds which were proceeds from the check of the father-in-law property of the community. The intention of the father-in-law was, in the event he was never repaid, to treat and make of the amount advanced a matter to be taken into consideration in his provisions for the distribution of his estate upon his death, and he felt himself absolutely secured. When this is taken into consideration nothing persists as a "badge of fraud" upon the husband's creditors. We are of the opinion that fraud may not be presumed to have been *prima facie* established, a burden of proof incumbent upon the insurance company. Furthermore, there was no commitment upon the face of some legal record which would effect the transaction(s). The intent and agreement, if any, on the part of the father-in-law is of paramount importance.

The case is one which does not present itself as a case ripe for summary judgment. Rather does it appear one where there should be a full blown hearing with opportunity afforded for examination and cross-examination of witnesses. The Insurance Company of North America's motion for summary judgment is denied.

Judgment is reversed, with the cause remanded for trial.